**Bernice P. DANIEL, Appellant,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Appellee.**

**No. 24527.**

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1968.

James L. Shores, Jr., Birmingham, Ala., Clarence F. Rhea, Gadsden, Ala., Paul Johnston, Birmingham, Ala., for appellant.

Macon L. Weaver, U. S. Atty., John R. Thomas, Jr., Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before RIVES, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

██ This is an appeal from the judgment of the district court affirming the decision of the Secretary that appellant is not entitled to a period of disability nor to disability insurance benefits provided by sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416 (i), 423. Our review is limited to a determination of whether the Secretary's decision is supported by substantial evidence. Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g); Also-brooks v. Gardner, 5 Cir., 1966, 357 F.2d 110, 111.

For some ten years appellant worked for Goodyear Tire & Rubber Company but left in 1954 because of ill health. On March 20, 1964, appellant applied for disability insurance benefits alleging that her disability began on June 30, 1954. It is undisputed that she last met the earnings requirement of the Act (42 U.S.C.A. § 423(c)) on June 30, 1959. The hearing examiner, at the conclusion of the hearing, found that appellant was not disabled within the meaning of the Act and subsequently the Appeals Council denied appellant's request for a review.

A careful examination of the record discloses that there were only two doctors who treated appellant during the critical period prior to June 30, 1959. Dr. Kay, a psychiatrist, filed a report with the hearing examiner that he saw appellant in May, 1957, and that "she had a good deal of anxiety and some phobic reactions." He further reported that she had improved greatly when he saw her in 1964 but added "working is definitely anxiety-producing, and she has found, on repeated efforts, that she cannot work for any length of time."

The evidence of Dr. Lumpkin, appellant's personal physician, is conflicting. In his report to the hearing examiner he said "This patient was first actively treated by me for hypertension in 1961 * * * and it is my opinion she would have been unemployable since that time." Significantly, however, the Appeals Council added to the record a letter from Dr. Lumpkin reciting in detail his treatment of appellant. This letter states that he began actively treating appellant for "severe nervousness" in 1951 and in July of 1954 he requested Goodyear Tire & Rubber Company to give her a three months' leave of absence because of this condition. Dr. Lumpkin's report concludes that "She was permanently and totally disabled at that time [upon her retirement from Goodyear] and was unable to seek gainful employment after her medical retirement from Goodyear Tire & Rubber Company, Gadsden, Alabama."

It is quite apparent that Dr. Lumpkin's reference to the year 1961 in his first statement to the hearing examiner was a mistake which was corrected as being the year 1951 in his later statement to the Appeals Council.

██ It is manifest that the hearing examiner made his findings based upon the erroneous date in Dr. Lumpkin's first statement—disability accruing in 1961—and necessarily therefore found that she was not entitled to receive disability insurance benefits "because it is essential that a person become disabled at a time he or she meets the special earnings requirements of the Social Security Act" [in this case June 30, 1959]. The Appeals Council, however, had the benefit of Dr. Lumpkin's subsequent report that appellant had been permanently and totally disabled since 1954. This and Dr. Kay's corroborating findings of appellant's disability in 1957 stood undisputed in the record before the Appeals Council. The non-medical evidence strongly supports the medical conclusions reached by these doctors. Appellant therefore carried the burden of establishing a medically determinable physical or mental impairment as of June 30, 1959. Section 216(i) (1) (A) of the Social Security Act, 42 U.S.C.A. § 416(i) (1) (A); Section 223(c) (2) (A) of the Social Security Act, 42 U.S.C.A. § 423(c) (2) (A).

There was, however, no evidence from which it could be determined whether the severity of the appellant's impair-

ment came within the definition of "disability" as used in the Act, i. e., "inability to engage in any substantial gainful activity," because no vocational witness was called. We had interpreted the Act to require evidence bearing on the question whether she has a "reasonable opportunity to compete for a job within * * * [her] determined capabilities in * * * [her] geographic area." Bridges v. Gardner, 5 Cir., 1966, 368 F.2d 86, 91, and that it was incumbent on the Secretary to make a determination "of whether or not claimant's physical or mental impairment would prevent him from being hired to fill jobs, if such jobs were open in the area in which claimant could reasonably be expected to compete." Gardner v. Smith, 5 Cir., 1966, 368 F.2d 77, 85.

Section 158(b) of the Social Security Amendments of 1967, 81 Stat. 821,[1] amends the disability provisions of the Social Security Act by adding, *inter alia*, the following provision:

(2) For purposes of paragraph (1) (A)—

(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 202(e) or (f) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

By section 158(e) (2) (B) of the Act the amendments are expressly made applicable to cases pending in the courts when "the decision in such civil action has not become final" before January of 1968.

 The lack of vocational testimony necessitates a further hearing before the hearing examiner to determine whether appellant is disabled as defined in the amendments which are now effective and which materially change the test we adopted in *Bridges* and *Gardner*, supra.

The judgment of the district court is vacated and the case is remanded for further proceedings in accordance with this opinion.

---

I. Signed by the President on January 2, 1968.