**Wilma S. BROWN, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education, and Welfare, Defendant.**

No. C–124–G–68.

United States District Court, M. D. North Carolina, Greensboro Division.

Nov. 21, 1969.

John Randolph Ingram, Asheboro, N. C., for plaintiff.

William L. Osteen, U. S. Atty., and Richard M. Dailey, Asst. U. S. Atty., Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks judicial review, pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), of the final decision of the Secretary of Health, Education, and Welfare, denying her the establishment of a period of disability and disability insurance benefits.

Plaintiff first filed application for disability insurance benefits on January 20, 1966, alleging she became disabled on December 18, 1945, due to "iritis of the eyes." The application was denied initially, and upon reconsideration. Plaintiff thereafter requested a hearing before a hearing examiner, which hearing was held on December 12, 1967, before Hearing Examiner George W. Otto. On December 28, 1967, Hearing Examiner Otto rendered his decision, finding that plaintiff was not disabled within the meaning of the Social Security Act, as amended, at any time through March 31, 1950, the date she last met the special earnings requirement of the Act for disability purposes, and, therefore, was not entitled to a period of disability or to disability insurance benefits as claimed in her application filed on January 20, 1966. The Appeals Council thereafter denied plaintiff's request for review.

This action was instituted on August 5, 1968, requesting judicial review of the decision of the Secretary. After this action was filed, the Court, on October 21, 1968, upon motion of the plaintiff, and with the consent of the defendant, remanded the cause to the Secretary for further administrative proceedings. On February 5, 1969, pursuant to said remand order, a further hearing was held before Hearing Examiner J. Marker Dern. Plaintiff was represented at the original hearing and the hearing on remand by her attorney, John Randolph Ingram, Esquire.

On February 18, 1969, Hearing Examiner Dern rendered his recommended decision, finding that plaintiff had failed to establish that her "impairment prevented her from engaging in substantial gainful activity for any continuous period, prior to March 31, 1950," when she last met the special earnings requirement of the Act, "which has lasted or can be expected to last at least 12 months," and that she "was not under a 'disability' as defined in the Act, either prior to or after the Social Security Amendments of 1965 and 1967, at any time prior to March 31, 1950." The final decision of the Secretary was rendered on May 29, 1969, when the Appeals Council adopted the recommended decision of Hearing Examiner Dern. The entire administrative record has now been certified back to the Court and the parties have cross-moved for summary judgment.

■ It is not disputed that plaintiff last met the special earnings requirement of the Act on March 31, 1950. Consequently, it is her burden to establish that she was under a disability, as defined by the Act, prior to March 31, 1950, which lasted, or could be expected to last, for at least twelve months. Whether plaintiff became "disabled" as a result of the condition of her eyes, or in combination with other impairments, subsequent to March 31, 1950, was not before the Secretary and is not before this Court. James v. Gardner, 4 Cir., 384 F.2d 784 (1967).

■ Effective July 30, 1965, the Social Security Act was amended by defining the term "disability" to mean "* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." The amendment had the effect of eliminating the requirement that the impairment be one which can be expected to be of long-continued and indefinite duration. Under the 1967 amendments to the Act, the statutory definition of "disability" was further clarified. These amendments provide that a claimant is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work," and the term "physical or mental impairment" is defined to be "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinic and laboratory diagnostic techniques." 42 U.S.C. § 423. "Work which exists in the national economy" is defined to mean "work which

exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423. The 1967 amendments became effective on January 2, 1968, and apply to decisions in civil actions which had not become final before that date. Davis v. Gardner, 6 Cir., 395 F.2d 681 (1968); Daniel v. Gardner, 5 Cir., 390 F.2d 32 (1968). A reading of the legislative history of the amendments clearly discloses that Congress intended for the Secretary and the courts to be more restrictive in considering claims for disability insurance benefits, and intended that such claims be disallowed unless supported by clinical and laboratory findings, or other medically acceptable evidence.

The issue before the Court is the substantiality of the evidence to support the Secretary's findings on the issues before him. In Thomas v. Celebrezze, 4 Cir., 331 F.2d 541 (1964), the prescribed standard of judicial review is stated as follows:

"The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: '* * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *.' Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir., 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the

record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951); Boyd v. Folson, 257 F.2d 778 (3rd Cir. 1958); 4 Davis, Administrative Law (1958) § 29.02, pp. 118–126. If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. Park v. Celebrezze, 214 F.Supp. 153 (W.D.Ark. 1963); Corn v. Flemming, 184 F. Supp. 490 (S.D.Fla.1960). In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C.A. § 405(g)."

Plaintiff was born on February 13, 1916. She has a ninth-grade education. Her first employment was in a handkerchief manufacturing plant doing "first one thing and then another." After the factory closed, she went to work in a hosiery mill seaming full-fashioned hosiery. She discontinued her work in the hosiery mill on December 18, 1945, because of visual difficulties, and has made no effort to obtain employment since that date. Plaintiff specifically states that she does not claim any impairment prior to March 31, 1950, or at the present time, except the difficulty she has experienced with her eyes.

There is no question that plaintiff has been practically blind in her right eye since 1946. On the other hand, vision in her left eye, with correction, is 20/20, or normal. Plaintiff complains of acute pain in her left eye, but Dr. Banks Anderson, Sr., a specialist in ophthalmology, who has treated plaintiff since 1946, states that his records do not disclose any complaint of pain in the left eye prior to 1958, and that he had never found any explanation for the pain complained of by the plaintiff. It was Dr. Anderson's opinion that plaintiff was able to engage in activity where she would not be around moving machinery and her field of vision defects would not be a problem. Plaintiff has at all times been able to do much of her housework, attend church and church socials, visit friends, and drive her automobile during daytime. Significantly, she has taken only "a few aspirin" for the pain in her left eye, and no medication has ever been prescribed by a doctor for the pain.

The evidence of disability is fully and accurately summarized in the Hearing Examiner's decision of December 28, 1967, the Hearing Examiner's recommended decision of February 18, 1969, and the decision of the Appeals Council of May 29, 1969. After carefully reviewing the entire administrative proceeding, and considering the record as a whole, the Court is of the opinion that there is substantial evidence to support the findings of the Secretary that the plaintiff, considering her age, education, and work experience, was physically able to engage in substantial gainful activity at all times prior to March 31, 1950, when she last met the special earnings requirement of the Act. The Court is of the further opinion that the Secretary was authorized to conclude that, despite plaintiff's visual defects, she retained the physical capacity to engage in the employment she had performed in the manufacture of handkerchiefs and in other allied work existing in the national economy.

It having been concluded that the Secretary's decision is supported by substantial evidence, and that the conclusions he reached are rational, it follows that the defendant's motion for summary judgment should be granted and the motion of the plaintiff for summary judgment should be denied.

A judgment will be entered accordingly.