**Albert WHITE, Plaintiff-Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 79–2354
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 1, 1979.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Dennis L. Horn, Hazlehurst, Miss., for plaintiff-appellant.

L. K. Travis, Asst. U.S. Atty., Jackson, Miss., for defendant-appellee.

Before GOLDBERG, RUBIN and POLITZ, Circuit Judges.

PER CURIAM:

The appellant in this Social Security disability claim urges that the Administrative Law Judge did too quickly what he should have done deliberately, decided facts on the basis of his personal knowledge without evidence and incorrectly placed the burden of proof of all issues on the claimant. He contends that the district judge made an error of law in entering a summary judgment against him. Finding none of these claims to have merit, we affirm.

Albert White, who is 48 years old and is a functional illiterate despite a fourth grade education, sought determination of a period of disability under Section 216 of the Social Security Act, 42 U.S.C. § 416(i); disability insurance benefits under § 223 of the Act, 42 U.S.C. § 423; and Supplemental Security Income under § 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A). His application was denied and he then requested and was granted a hearing, which was held before an Administrative Law Judge on June 15, 1977.

At that hearing, testimony was taken solely from the claimant; no vocational expert or other witness appeared for the Secretary. Thereafter the claimant was examined by a physician and radiological studies of his lower extremities were made. Dr. Perrin L. Berry, an internist with a specialty in cardiology, reported, "[t]his patient's hypertension is under good control. He is able to return to work under conditions discussed in the residual functional capacity report." That report, also signed by Dr. Berry, states: (1) "During an 8 hour work day the patient should be able to . . . [s]tand and/or walk for as much as 6–8 hours;" (2) "The patient should be able to lift as much as: . . . 20–50 lbs. [(a]n occasional [m]aximum[)] (perhaps several times per day)" and 20 lbs. "[f]requently (perhaps several times per hour)" (3) "The patient can use his . . . upper extremities: [t]o reach above shoulder level" and "for pushing and/or pulling. . . . " (4) The patient can not use his feet in repetitive raising or pushing; (5) The patient can bend over frequently, squat occasionally and climb occasionally. Dr. Park, in an earlier pre-hearing examination had concluded that the claimant was "probably disabled because of very low incentive to work."

These reports were considered by the Administrative Law Judge, who later issued a decision denying the claim. His decision was upheld by the Social Security Appeals Council. The claimant then timely filed this suit and both parties moved for summary judgment. The decision of the Secretary denying benefits to Mr. White was upheld by the district judge.

The ALJ found that Mr. White was unable to engage in strenuous physical activity, the only kind of work, apparently, that White had done. He also found, however, that Mr. White has the

remaining capacity for light to moderate weight bearing, walking, standing, sitting, stooping, grasping, lifting, reaching and bending.

He has the ability to perform gross or fine manipulative movements of the arms, hands, and fingers. He has unimpaired ability to coordinate. There is no evidence of significant loss of strength or evidence of the presence of severe pain.

There was no testimony concerning other employment available to a person with these abilities and disabilities. The ALJ concluded, however, that "[t]he claimant could, if motivated to do so, work as a custodian or janitor in any public or private

building or similar type of work activity not requiring strenuous physical labor" and then took "official notice that such jobs exist in substantial numbers not only in the national economy but in the immediate area of Jackson, Mississippi, where the claimant resides."

■ The Secretary's findings are conclusive if supported by substantial evidence, taking the record as a whole. *Richardson v. Perales,* 1971, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842; *Rome v. Finch,* 5 Cir. 1969, 409 F.2d 1329.

> The Act does provide for a limited measure of judicial review, § 205(g), 42 U.S.C. § 405(g), but the role of the courts in this quintessentially administrative process is extremely narrow:
>
> > We do not re-weigh the evidence; we simply determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."/ *Richardson v. Perales,* 1970, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 . . .
> >
> > [D]eterminations which are not supported by substantial evidence are unusual, even rare. *Gaultney v. Weinberger,* 5 Cir. 1974, 505 F.2d 943, 945.

*Lewis v. Weinberger,* 5 Cir. 1975, 515 F.2d 584, 586–587.

■ The burden rests on the claimant to produce substantial evidence to establish his disability. 42 U.S.C. § 423(d)(5). If the claimant proves that he is unable to do his usual job, the burden shifts to the Secretary to show that there is some other kind of "substantial gainful activity" that the claimant is able to perform. The Secretary satisfied this burden with the medical evidence adduced as a result of the post hearing examination.

This is not, then, the kind of case that was before us in *Lewis v. Weinberger, supra,* for there, after reviewing the record, we concluded that,

"[t]he evidence as to whether . . . [the claimant's] impairments are so disabling as to deprive him of his capacity to engage in even physically light or secondary employment is equivocal and contradictory and does not rise to the level of substantial evidence."

515 F.2d at 587. That also was the kind of evidence in the record in *Jackson v. Richardson,* 5 Cir. 1971, 449 F.2d 1326, 1330.

■ The ALJ did take notice that certain jobs require little physical effort, are sedentary in nature and exist in the national economy. If the facts noticed were controverted, then Mr. White should have asserted this, and should have been given an opportunity to prove that the facts were indeed different. *Compare* Rule 201, Fed. R.Evid., (relating to judicial notice). The claimant here, however, concedes that the notice taken was not improper.[1] The claimant is incorrect in asserting that the ALJ took notice of the claimant's capacity to do those light and sedentary jobs. Of this fact there was medical evidence. It was not necessary in the light of the abundant evidence about Mr. White's physical condition to call a vocational expert to put two and two together. *See* K. Davis, Administrative Law Treatise § 15.11 (1978 Supp.), in which the author states:

> One way to deepen understanding of what the law of official notice is and should be is by a strong focus on one problem at a time. A good problem to select is: In what circumstances and with what protective procedure should ALJs and the Appeals Council take official notice of what they find in standards works about (a) nature and extent of asserted disability, (b) details about particular jobs that a claimant might fill, and (c) the availability of such jobs? Medical treatises can be used on the first subject, and vocational guides of various kinds (such as the much-used Dictionary of Occupational Titles) provide information on the second and third subjects.

---

1. It was proper for the ALJ to take administrative notice that jobs that are light and sedentary in nature exist in the national economy. *See Brown v. Finch,* 5 Cir. 1970, 429 F.2d 80, 82; *Breaux v. Finch,* 5 Cir. 1970, 421 F.2d 687, 689. *Accord Hernandez v. Weinberger,* 1 Cir. 1974, 493 F.2d 1120, 1123.

Far the largest adjudicative agency in the government is the Bureau of Hearings and Appeals of the Social Security Administration, which has about 625 administrative law judges—more than all the rest of the federal government, and a larger number than the 505 judges of all federal courts. The great bulk of the 180,000 cases disposed of by BHA in one year are disability cases, which involve an average of about $25,000. Two main facts about BHA hearings are that the ALJ has the affirmative responsibility for developing facts on both sides, and that claimants are unrepresented by counsel in about 70 percent of the cases.

What can be learned by close examination of the official notice problem of BHA is that the focal point has to be the adequacy of procedural protection when facts are noticed; the crucial question is whether or not the claimant is given sufficient opportunity to meet the noticed facts.

.　　　.　　　.　　　.　　　.

The Administrative Procedure Act provides in § 556(c):

When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.

The provision is unquestionably applicable to disability cases that are heard before ALJs, because the statute, 42 U.S.C. § 405(b), requires disability decisions to be made "on the basis of evidence adduced at the hearing."

.　　　.　　　.　　　.　　　.

Unfairness may result when facts are noticed without precisely indicating the facts and their source. A quick remark by an ALJ that he takes official notice of availability of jobs in the national economy that would be suitable for the claimant could be unfair for lack of sufficient specificity.

The ALJ here made a specific finding that the claimant could "if motivated to do so, work as a custodian or janitor in a public

or private building or similar type of work activity not requiring strenuous physical effort." There was no offer of evidence to the contrary.

The ALJ properly concluded that, under the facts found by him, the Secretary had borne the burden of showing that there was substantial gainful work that the claimant could perform. *Lewis v. Weinberger, supra*, 515 F.2d at 587. The ALJ and the trial judge applied the proper legal standards. Accordingly, the judgment of the district court is AFFIRMED.